**KENNETH ROSELLINI (6047)**
**ATTORNEY AT LAW**
636A Van Houten Avenue
Clifton, New Jersey 07013
 (973) 998-8375 Fax (973) 998-8376
*Attorney for Plaintiff Kevin Lewis*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KEVIN LEWIS,<br><br>    Plaintiff,<br><br>        v.<br><br><br>GLENN A. GRANT, J.A.D., Acting Administrative Director of the Courts of the State of New Jersey, in his official capacity, DAVID TANG, Chief of the Family Practice Division within the Administrative Director of the Courts of the State of New Jersey, in his official capacity, EDWARD W. HOFFMAN, Judge, New Jersey Superior Court, Family Division, Burlington County, in his official capacity, and LINDA A. HYNES, Judge, New Jersey Superior Court, Family Division, Burlington County, in her official capacity,<br><br>    Defendants. | CIVIL ACTION<br><br>Case No. :<br><br>**JURY TRIAL DEMANDED**<br><br>**COMPLAINT and JURY DEMAND** |

Plaintiff Kevin Lewis, in the above-captioned matter, by and through his counsel of record, for his causes of action against Defendants, states as follows:

## PARTIES AND RELEVANT PERSONS

1.      Plaintiff, Kevin Lewis (referred to at times as "Mr. Lewis") is domiciled in the State of Jersey, residing in Burlington County, New Jersey at times relevant to this Complaint and is the father of three children who were subject to the jurisdiction of the New Jersey Superior Court, Chancery Division, Family Part ("New Jersey Family Court" or "Family Court"), one of which is still a minor over which the New Jersey Family Court continues to exercise jurisdiction.

2.      Defendant Glenn A. Grant, J.A.D. (hereinafter referred to at times as "Defendant" or "Grant"), is the Acting Administrative Director of the Courts of the State of New Jersey, is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

3.      Defendant, David Tang (hereinafter referred to at times as "Defendant" or "Tang"), is the Chief of the Family Practice Division within the Administrative Director of the Courts of the State of New Jersey, and is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters

and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

4.    Defendant, Edward W. Hoffman, (hereinafter referred to at times as "Defendant" or "Nocella"), is the Presiding Judge, New Jersey Superior Court, Family Division, Burlington County, and is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

5.    Defendant, Linda A. Hynes, (hereinafter referred to at times as "Defendant" or "Hoffman"), is a Judge in the New Jersey Superior Court, Family Division, Burlington County, and is sued in his official capacity, and is liable for his actions done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the Defendants.

6.    Carmen Diaz-Petti ("Diaz-Petti") is the current Director of the New

Jersey Division of Child Protection & Permanency ("DCP&P") and is liable for her actions in her official capacity done under color of state law.  Diaz-Petti is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law.

7.     Christine Norbut Beyer ("Beyer") is the current Commissioner of the Department of Children and Families and is liable for her actions in her official capacity done under color of state law.  Beyer is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law.

8.     Lauralie Lewis (hereinafter referred to at times as "Lauralie Lewis"), is the mother of Ka.L.

## JURISDICTION AND VENUE

9.     This is a civil action brought against the Defendants by the Plaintiff, seeking a judgment to enforce and declare his rights under the First, Fourth, Ninth and Fourteenth Amendments to the Constitution for the United States of America pursuant to 42 U.S.C. §1983 and 28 U.S.C. §§2201-2202 and §204(a) of the federal Civil Rights Act of 1964 (Civil Rights Act) and for Prospective Injunctive Relief pursuant to 42 U.S.C. §1983 and 42 U.S.C.S § 1985(3).

10.     The Court has jurisdiction over this action, which presents a federal

question under Article III, §2 of the Constitution for the United States of America, pursuant to 28 U.S.C. §1331 and 2201-2202.

11.    Venue is proper in this Court under 28 U.S.C. §1391, because many of the parties reside in this District, and all of the events giving rise to this claim occurred in this District.

## FACTUAL BACKGROUND

12.    Plaintiff Kevin Lewis, an African-American, is the loving parent and legal guardian of the minor child Ka.L. ("Plaintiff's Child").

13.    Since 2016, Plaintiff's custody rights have been subject to legal proceedings concerning his parental rights as to Ka.L. in the New Jersey Superior Court, Burlington County Vicinage, Chancery Division, Family Part.

14.    Plaintiff was also subject to proceedings brought by DCP&P in which it was asserted that Plaintiff has abused or neglected his children.

15.    When Plaintiff was given a full fact finding hearing, it was proved that there was no basis for the allegations, and the abuse and neglect allegations against Plaintiff were dismissed by the court by order of June 30, 2017.

16.    The only experts to testify during these proceedings proved that Plaintiff did not pose any risk of harm to his children, and that Plaintiff should have unsupervised parenting time with his children.

17.    Plaintiff filed multiple motions before the court for approximately

over 100 visitations that the children were never brought to, and never attended.

18.     Superior Court judges in the New Jersey Superior Court, Burlington County Vicinage, Chancery Division, Family Part failed to take any action to enforce visitation rights on Plaintiff's numerous applications.

19.     When Plaintiff's contact with his children was finally restored, in August of 2016, it was limited to 90 minutes DCP&P supervised visitation for only once a week.

20.     When ultimately DCP&P dismissed its action against Plaintiff, the Family Court continued to exercise jurisdiction over the Plaintiff and his relationship with his ex-wife and his children under matrimonial docket, "FM", in connection with divorce and post-divorce judgment proceedings in the matter of *Kevin Lewis v. Laualie Lewis*, FM-03-459-16

21.     Despite the fact that the Plaintiff posed no risk to his children, and expert evidence proved by clear and convincing evidence that Plaintiff should have unsupervised visits with his children, the Family Court refused to expand the rights of visitation of Plaintiff beyond 90 minutes supervised visitation for only once a week, despite Plaintiff's numerous meritorious applications to the Family Court for increased visitation.

22.     In fact, the Family Court also refused to enforce Plaintiff's rights of visitation at all, and despite Plaintiff's numerous applications to the Family Court,

the Family Court refused to enforce visitation rights of the Plaintiff, causing him to go years without any visits with his children.

23.    This refusal to enforce Plaintiff's rights of visitation occurred for over four years, which includes a period of three consecutive years with no contact whatsoever; no phone, no letters, no birthdays, or holidays.

24.    This failure to enforce rights of visitation constitutes parental alienation, and in May of 2022 an objective child psychological expert submitted a report to the Family Court finding that the Family Court's actions had improperly caused parental alienation, a violation of Plaintiff's Constitutional Rights.

25.    In May of 2022, Plaintiff filed a motion to enforce his parenting time and visitation, and included in the motion a report from the independent court approved psychological expert that indicated a clinical diagnosis of parental alienation by the mother against Plaintiff, as the father, and alienation caused by the actions of the New Jersey Court system and New Jersey Division of Child Protection and Permanency towards the Plaintiff.

26.    As part of that motion, Plaintiff, by way of his counsel, submitted to the court for consideration a published article ([Racism in N.J.'s child protection system - nj.com](#)) (By Susan K. Livio | NJ Advance Media for NJ.com) ("Racism in N.J.'s Child Protection System Report") (set forth more fully below), and asked Judge Hynes to take judicial notice of the article, indicating that there was severe

racism in actions taken with respect to the parental rights of African-Americans by the New Jersey Division of Child Protection & Permanency and the New Jersey Court system.

27.    Judge Hynes appeared to be angered by the request to take judicial notice of the report and stated that she would not consider it at all.

28.    The report also indicates that all three children had been subjected to parental alienation by the mother against the father, alienation by the New Jersey courts, and DCP&P.

29.    It is because of the Family Court's improper action, and the mother's intentional parental alienation that was facilitated by the Family Court, that Mr. Lewis's two children are now lost to him forever.

30.    Two of his children have during the course of these proceedings reached the age of majority, but one of his children is still a minor, and the Family Court continues to arbitrarily and capriciously refuse to enforce Plaintiff's rights to visit his child while also refusing to increase his rights of visitation.

31.    During the course of the aforementioned proceedings, DCP&P and Lauralie Lewis continuously attempted and attempt to fabricate evidence to prevent Plaintiff from attending his visits with his children.

32.    Plaintiff subsequently filed lawsuits, exercising his First Amendment rights, in the United States District Court for the District Court of New Jersey

pursuant to, *inter alia*, §1983 for declaratory and injunctive relief against, inter alia, DCP&P, state court administrators, and the family court judges who presided over court proceedings involving his parental rights under the Fourteenth Amendment.

33.     These lawsuits include the following:

| 1:18-cv-09397-NLH-KMW | LEWIS v. DIAZ-PETTI et al | filed 05/17/18 | closed 04/25/19 |
|---|---|---|---|
| 1:21-cv-01671-NLH-AMD | LEWIS v. NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES et al | filed 02/01/21 | closed 08/23/22 |
| 1:22-cv-03242-NLH-MJS | LEWIS v. DIAZ-PETTI et al | filed 05/28/22 | closed 05/17/23 |

34.     The most recent of these lawsuits is currently pending on appeal with the United States Court of Appeals for the Third Circuit (Case Number 24-1110, *Kevin Lewis v. Carmen Diaz-Petti*) in which the current presiding judge in the family part in Burlington County, Judge Hoffman, is a named party.

35.     In January 2021 Plaintiff's FM case was transferred to Judge Hoffman.

36.     Judge Hoffman continued the conduct of the previous judges and refused to enforce Plaintiff's rights with respect to his children.

37.     Judge Hoffman ordered therapy at the Plaintiff's expense despite the

fact that Lauralie Lewis had disrupted three previous therapy sessions and has been in non-compliance with previous court orders.

38.   Defendant Judge Edward W. Hoffman, continuously refused to enforce Plaintiff's rights of custody and visitation with his children despite Plaintiff's numerous meritorious applications to the Family Court, the fact that Plaintiff poses no risk of harm to the children, and that he is in fact a fit parent.

39.   Plaintiff's FM case was subsequently transferred to Defendant, Judge Linda A. Hynes, who is currently under the supervision of Judge Hoffman as the current Presiding Family Part Judge.

40.   In September 2022, Plaintiff filed a complaint with the Burlington County Family Division Manager, Richelle Coleman, for unequal treatment, based on his race being African-American.

41.   Upon information and belief, that complaint was referred to the Office of Equal Opportunity with the Administrative Office of the Courts, and it took no action to Plaintiff's knowledge.

42.   In that complaint Plaintiff provided examples of what he believes to be race base discrimination by the New Jersey judiciary, and specifically Judge Hynes.

43.   The nature of Plaintiff's complaint, surrounded race based discrimination, which he believed the New Jersey judiciary had engaged in by

intentionally delaying his court matter, and denying him the opportunity to adjudicate his rights as a parent in court.

44. These delays by Judge Hynes continued as Plaintiff's due process and rights to family integrity as a parent were denied and his rights to custody and parenting time with his children were unconstitutionally denied.

45. These rights were continually denied despite competent material expert evidentiary report of Plaintiff's fitness as a parent provided to Judge Hynes by a court approved expert, who detailed in the report that his children had been alienated against him by his ex-wife, the New Jersey Court system, and DCP&P.

46. Plaintiff asserted that he believed this discrimination was also in retaliation for his filing a complaint in federal court, against members of the New Jersey judiciary specifically Defendant Office of Administrative Court Judge Grant, as well as other family division members, and officers of the New Jersey judiciary.

47. In two weeks, Plaintiff was advised by the Office of Administrative Court that it did not have jurisdiction over the complaint, but did not advise what office within the New Jersey judiciary or other office within the State of New Jersey that did have such jurisdiction.

48. Upon information and belief, no further action has been taken by officers of the New Jersey courts, including but not limited to those named as

defendants herein, despite the Plaintiff having provided material evidence of discrimination and unequal treatment against him based upon race.

49. Plaintiff's FM case currently continued to be before Defendant Judge Linda A. Hynes, and the delays continued.

50. Over the past two years, Judge Hynes has approved approximately 20 continuances of hearings to enforce the Plaintiff's rights as a fit parent to parenting time and custody of Ka.L., who is still a minor, but whom will turn 18, the age of majority in New Jersey, in less than six months, upon which she will have "aged out" and issues concerning Plaintiff's parental right of custody and parenting time will be moot.

51. The continuances have occurred despite the Court's own approved expert approximately six months ago having recommended unsupervised visitation with the minor child.

52. There is no rational basis for the continued delay by Judge Hynes, and the delays have occurred subsequent to Plaintiff having filed complaints of discrimination against her and federal civil actions for violation of his fundamental rights as a parent against, *inter alia*, her supervisor, Judge Hoffman, and other members of the judiciary.

53. Plaintiff's prosecution of his civil rights actions against Judge Hoffman and the state judiciary were raised on the record before Judge Hynes,

including by Plaintiff in testimony on the record before Judge Hynes in answering questions posed to him regarding his lawsuits against the judiciary.

54.    In fact, Plaintiff's filed lawsuits against the New Jersey Judiciary, including against Judge Hoffman, were brought up in court proceedings before Judge Hynes, including by Judge Hynes, no less than ten times.

55.    Plaintiff is therefore being irreparably harmed by the Defendants continuing denial of due process, delays, and failure to enforce his rights as a parent under the Fourteenth Amendment.

56.    Plaintiff asserts that there is no legitimate basis for the continued delay by the Defendants in denying the Plaintiff his due process and parental rights under the Fourteenth Amendment, and that the denial is deliberate, intentional, and in retaliation for his exercising his First Amendment Rights to file federal lawsuits to enforce constitutional rights under §1983 and to file a complaint with the New Jersey Judiciary asserting that he is the victim of facial discrimination within the family court system.

57.    Plaintiff has, through his attorney in the state court proceedings, vigorously and repeatedly petitioned for due process to uphold his constitutional rights, so that he is not again denied due process, as he was to his two children which were also the subject of custody and parenting time proceedings in the FM case, but have since been "aged out" without the hearings on custody and parenting

time which Plaintiff sought having ever been heard.

58.    In February 2024, Plaintiff filed another complaint with the Administrative Office of the Courts requesting an investigation, and providing documented evidence and proof of his previous complaint of race-based discrimination and retaliation.

59.    On May 10, 2024, Plaintiff was advised that the Administrative Office of the Courts would with respect to the complaint that it would not "intercede or advocate on behalf of any litigant regarding legal proceedings".

60.    Plaintiff has received multiple reports by the court appointed supervisor documenting that the Plaintiff should not be on supervised visitation, but have unsupervised visitation, which have been ignored by Judge Hynes .

61.    Plaintiff also received a very favorable evaluation from the Guardian Ad Litem, who and her report stated that Mr. Lewis and his daughter should be compelled to be reunified.

62.    There are no other experts other than these three experts, and yet judge Hynes continues to deny unsupervised visitation for the Plaintiff or allow him an opportunity to restore his full custodial and parental rights, in what Mr. Lewis asserts is direct retaliation for his previous filing of complaints against the New Jersey judiciary, and complaints of racial discrimination against judge Hynes and the New Jersey judiciary.

63.     Mr. Lewis asserts that Judge Hynes is intentionally delaying the matter or in conspiracy at the direction of other Defendants is intentionally delaying the matter in retaliation for his previous complaints of discrimination and court filings against the judiciary.

64.     Plaintiff asserts that the Defendants' actions in repeatedly denying him due process and refusing to investigate his complaints of discrimination are retaliation for his engaging in activity protected under the First Amendment.

65.     In fact, upon information and belief, the New Jersey judiciary recently was under fire for not treating African-Americans fair and the judicial system have a pattern and practice that discriminates again African-American litigants, specifically children of color.

66.     In December of 2021, an investigative journalist published a report documenting racism against African Americans in the State of New Jersey perpetrated by the Division of Child Protection & Permanency in conjunction with the courts of the State of New Jersey ([Racism in N.J.'s child protection system - nj.com](https://nj.com)) (By Susan K. Livio | NJ Advance Media for NJ.com) ("Racism in N.J.'s Child Protection System Report").

67.     On page four of the Racism in N.J.'s Child Protection System Report, it is stated that:

Black children are 13% of the population under the age 18 in New Jersey,

but are dramatically overrepresented in foster care, making up 42% of the children taken from their families.

> And in 2017, Black children spent an average of 751 days in a foster home - 140 more days than white children and 127 more than Latino children.

> Those who run New Jersey's child welfare system and oversee family courts dispute none of this. . . .

68.    Defendant Glenn A. Grant was quoted in his capacity as Acting Administrative Director of the New Jersey Courts on page four in the Racism in N.J.'s Child Protection System Report as stating, "Government is responding to society's demand for a fairer system." .

69.    The Racism in N.J.'s Child Protection System Report on page five states:

> Grant, Children and Families Commissioner Christine Beyer and other state leaders have been working together to make the system more equitable, beginning in 2018. They are making incremental but tangible improvements. Grant acknowledges "shocking" racial disparities in foster care remain. "I wish I could tell you why. It's the nature of the work in society. Almost all of the hard things take time," Grant said.

70.    The Racism in N.J.'s Child Protection System Report on page eight states:

> Reggie Jones, who spent 28 years as a caseworker in Essex County before retiring about a year ago, said there is no question the child welfare system is harder on Black families.
> "Any worker who worked for DYFS knew they were quicker to remove a child from Black family than a child from a white family," said Jones,

referring to the child protection agency by its previous name, the Division of Youth and Family Services or DYFS.

Jones, who is Black, said he believes there was a pervasive but unspoken belief that "a Black family can't handle their family."

Jones, 67, said he would level with clients about how they may have been perceived by the family court and child welfare system.

"I would tell the client, you need to get yourself together," he said. "This is what they think of you."

71.    Despite this information, the New Jersey Courts, with Defendant Grant as Administrative Director of the New Jersey Courts, continues to remove and violate the rights of African-American children in order to cover and continue the race base, systematic discrimination that currently exist in the New Jersey Courts.

72.    The court record reveals that the testimony from the court approved expert was that Plaintiff Lewis was painted as a violent individual, and there was no evidence whatsoever in the record to reflect any violence or substantiate any of that against Plaintiff.

73.    The record reveals that the court approved expert, Ann L. Colley, LMFT, M.Div., M.B.A. ("Colley") reviewed court transcripts, court records, and spoke to all relevant parties, including the children, doctor reports, etc., and did not see any evidence to substantiate that Plaintiff's parental rights should be terminated.

74.    Testimony of Colley included the following:

**Anne Colley:** You mean that substantiated or didn't substantiate?

**Alex Flynn** [attorney for Lauralie Lewis, mother] **:** Yeah, sure. Whatever evidence it was, positive, negative, no effect, whatever, any evidence.

**Anne Colley:** What I had read were the transcripts from the various court happenings and reports that came from that as well as the doctor's reports. And again, after speaking to all parties as well as the courts, I did not see any evidence as to why he should be stripped of his parental rights.

75.    The record reveals that the court approved expert, Colley, testified that there was no legitimate reason to deny Plaintiff unsupervised parenting time, based upon her years of experience and research, and the fact that the minor child confirmed and substantiated that she was never abused by her father.

76.    Testimony of Colley included the following:

**Anne Colley:** No. In this particular case, I came to an assessment that there was no legitimate reason that I could see, based upon the myriad of years and research or reports that I read, based upon the interactions and the conversations that I had with Kaylee, who she herself said her father never abused her.

77.    The record reveals that the court approved expert, Colley, also testified that she did not see any reason that Plaintiff should have been separated from his daughter, and that there was nothing in the Division of Child Protection & Permanency reports, which indicated there was physical or mental abuse, that cited any evidence of any kind proving there actually was physical or mental abuse—ant that even parents who are substantiated to have sexually abused their children are permitted to see them.

**Anne Colley:** As part of the traction of what had been happening. Again, based upon my clinical assessment, I did not see any reason that this father

should have been separated from his daughter. There was nothing in DCCP's reports that showed any true physical, mental abuse. They even said it in their own reports. So yes, I did not see.

**Anne Colley:** There are children who are sexually abused who see their parents.

78.     The record further reveals that the court approved expert, Colley, testified that the New Jersey Court system and the New Jersey Division of Child Protection and Permanency system, generally failed Plaintiff's family.

**Anne Colley:** Nothing that Mr. Lewis is doing or has done in regards to suing anybody in New Jersey had any bearing on what my assessment is as a clinical professional in the therapeutic area.

**Alex Flynn:** [attorney for Lauralie Lewis, mother] But not withstanding that, you still decided that this court, DCP&P, and the system generally failed this family in your report, right?

**Anne Colley:** Correct.

79.     Despite this, Plaintiff's parental rights have still not been fully restored and he has not been provided with due process in a timely or efficient manner so that his Constitutional Rights under the Fourteenth Amendment continue to be violated by the New Jersey Courts in retaliation for his exercising his First Amendment Rights and due to racism against African Americans.

80.     On September 23, 2024, Defendant Judge Hynes issued an order continuing the denial of Plaintiff's unsupervised visitation and parenting time with

his minor child, without any substantiated basis in law of fact, in violation of the Plaintiff's fundamental rights as a parent, alienating Plaintiff from his child and ultimately severing the relationship between him as the parent and child.

81. In the decision by Defendant Judge Hynes, incredibly, the qualifications of the expert Colley, the Court's own chosen expert, were disparaged, and the expert's report was described as being stale, which could only be because of the Judiciary's own wrongful conduct in the delayed due process that denied Plaintiff's right to a timely hearing.

82. Defendant, Judge Hynes's decision continues to deny Plaintiff's rights, effectively ratifies the parental alienation the at the Court proximately caused, refuses to award Plaintiff make up parenting time, orders the complete discontinuance of any court ordered supervised parenting time after only four more supervised sessions, and completely denies Plaintiff any and all rights to parenting time with his child, leaving those rights solely at the discretion of the minor child, without any due process to objectively monitor whether the minor child is being unduly influenced or her decisions are a result of wrongful parental alienation.

83. The Plaintiff is currently in the process of appealing the Defendant, Judge Hynes's decision.

84. The delays and outright refusal to enforce parenting time and visitation enhance the alienation because they prevent Plaintiff as a parent from

establishing a relationship with his child, and further complicate and eliminate any possibility of any real parent time and custody, therefore making reunification ultimately impossible without emergency declaratory and injunctive relief from this court.

85.   Defendants' unconstitutional actions were done in retaliation for Plaintiff's assertion of his fundamental rights as a parent, and as invidious discrimination against Plaintiff due to his race.

86.   Defendants have a history and pattern and practice of such retaliation in connection with those persons that assert meritorious complaint of a lack of due process within the courts in the State of New Jersey.

87.   In August of this year, for example, the United States Department of Justice entered into a MEMORANDUM OF AGREEMENT BETWEEN THE UNITED STATES OF AMERICA AND THE NEW JERSEY JUDICIARY, DOJ NUMBER 171-48-44 USAO NUMBERS 2018V0085, 2018V00269, based upon the findings of a Justice Department investigation spanning the years 2019 through 2023.

88.   In that matter, "the United States Department of Justice (the United States) received a complaint that alleged the Monmouth Vicinage Superior Court (MV), a Vicinage within the New Jersey Judiciary (the Judiciary), failed to take reasonable steps to provide meaningful access to court users with limited English

proficiency (LEP), and that MV retaliated against the Complainant, an MV employee, for notifying the United States of Complainant's concerns, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d to 2000d-7, and its implementing regulations, 28 C.F.R. Part 42, Subpart C (together, Title VI)."

89.   The settlement was with jurisdiction over the matter, "under Title VI, which prohibits race, color, and national origin discrimination in any program or activity receiving federal financial assistance . . . [which also] prohibits retaliation against any person who engages in a Title VI protected activity, such as filing a complaint or participating in an investigation. "

90.   As a result of the settlement, the New Jersey Judiciary is required to report to the Justice Department its compliance with required judiciary language assistance services for persons appearing before the courts and the required training of persons employed by the New Jersey Judiciary, so that persons appearing before the Courts in the State of New Jersey having meaningful access to the court system.

91.   The settlement also includes an acknowledgement that the New Jersey Judiciary may not "take adverse action against anyone . . . for alleging Title VI violations", and that the New Jersey Judiciary will implement "non-retaliation training annually to all Judiciary judges and staff employees."

92.    The settlement also required that the New Jersey Judiciary pay the

Complainant, who had asserted the wrongful retaliatory conduct, compensation of $89,718.

93.    In order to ensure the New Jersey Judiciary's compliance with the agreement, the Justice Department has stated that it will monitor compliance with the agreement for two years.

## FIRST COUNT

### Declaratory Relief 28 U.S.C. §2201

94.    Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

95.    A declaratory judgment construing and determining the constitutionality of the rules promulgated and procedures employed by the Superior Court of the State of New Jersey, Chancery Division, Family Part will serve useful purpose in clarifying and settling legal relations in issue, and will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to proceeding.

96.    Plaintiff has Article III standing as there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

97.    Plaintiff is not challenging state court judgments, but the underlying policy that governed those judgments.

**WHEREFORE**, Plaintiff, Kevin Lewis respectfully requests that the Court enter judgment in his favor against Defendants, Glenn A. Grant, J.A.D., David Tang, Edward W. Hoffman, and Linda A. Hynes, and award the following relief:

A.    Declaring as a matter of right and due process under the First, Fourth and Fourteenth Amendments to the Constitution for the United States of America, that the state, including its judicial branch, may not institute arbitrary and capricious supervised child visitation restrictions upon a parent when there is no credible evidence of imminent or actual abuse and neglect of that child by the parent.

B.    Declaring as a matter of right and due process under the First, Fourth, Fourteenth Amendments to the Constitution for the United States of America, that the state, has no interest in investigating and litigating against parents, in state court or otherwise, when there is no credible evidence of imminent or actual abuse and neglect of that child by the parent.

C.    Declaring as a matter of right and due process under the First, Fourth, d Fourteenth Amendments to the Constitution for the United States of America, that a parent has a Constitutional Right to a timely hearing with a full and complete record upon the application to a family court to assert their rights of visitation with their children.

D.      Declaring as a matter of right and due process under the First, Fourth, d Fourteenth Amendments to the Constitution for the United States of America, that a parent has a Constitutional Right to a hearing with a full and complete record upon the application to a family court to assert their rights of visitation with their children and that the Family Courts in New Jersey may not discriminate against a parent based upon their race.

## SECOND COUNT

### Claim Under 42 U.S.C. §1983

98.     Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

99.     The Defendants, Glenn A. Grant, J.A.D., David Tang, Edward W. Hoffman, and Linda A. Hynes are acting under the color of state law and have a Constitutional duty to ensure fair and timely hearings in connection with the removal of children from the custody of fit parents, and to ensure that those hearings regarding custody and visitation rights of parents are free from racism.

100.    This responsibility includes promulgation and enforcement of rules and regulations regarding avoidance of threats and abuse of process in the investigation of allegations of child abuse and to ensure that there is no retaliation

against Parents who exercise their First Amendment Rights to file complaints against those persons acting under color of state law are free from retaliation.

101. On information and belief, Defendants, Glenn A. Grant, J.A.D., David Tang, Edward W. Hoffman, and Linda A. Hynes, failed to promulgate and enforce of rules and regulations regarding avoidance of threats and abuse of process in the investigation of allegations of child abuse and to ensure that there is no retaliation against Parents who exercise their First Amendment Rights to file complaints against those persons acting under color of state law are free from retaliation.

102. Plaintiff has been harmed by this failure and is at risk of further harm from such failure.

103. The Defendants Glenn A. Grant, J.A.D., David Tang, Edward W. Hoffman, and Linda A. Hynes are charged with the responsibility and duty to abide by Constitutional Due Process of Law in family court proceedings involving the rights of parents to visit with their children.

104. This responsibility includes implementing judicial proceedings which are determined based upon the rule of law and competent evidence with a full and fair opportunity to be heard in a court of record, and not which are determined arbitrary and capriciously.

105. These Defendants have failed to abide by and implement such proceedings as a matter of due process as to the Plaintiff and those similarly situated to the Plaintiff.

106. Plaintiff is not challenging state court judgments, but the underlying policy that governed those judgments.

107. Plaintiff has been harmed by such policy and is at risk of further harm from such policy.

**WHEREFORE**, Plaintiff, respectfully demands judgment against the Defendants, Glenn A. Grant, J.A.D., David Tang, Edward W. Hoffman, and Linda A. Hynes, jointly and severally:

A) For Injunctive Relief in the form of an order requiring that the explicit instruction and policy be made requiring those acting under color of state law in New Jersey from retaliation against parents who exercise their First Amendment Rights to file complaints against those persons acting under color of state law who fail to provide due process to parents in connection with custody and parenting time court proceedings free from discrimination against parents who are African American.

B) For Injunctive Relief in the form of an order requiring the Superior Court of the State to institute ruled of procedure to guarantee that

parents receive fair and timely hearings concerning their rights of visitation with their children consistent with the due process requirements of the Fourteenth Amendment free from discrimination against parents who are African American.

## THIRD COUNT

### Claim Under 42 U.S.C.S § 1985(3)

108.  Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

109.  Defendants, Glenn A. Grant, J.A.D., David Tang, Edward W. Hoffman, and Linda A. Hynes have conspired with a meeting of the minds to deny the Plaintiff a full and fair due process hearing in Family Court for restoration of his custody and visitation rights to his minor child in retaliation for his exercising his First Amendment Right to file complaints against them for Constitutional Rights violations and discrimination against him as an African American.

110.  As a result, Plaintiff has been denied the equal enjoyment of rights and privileges under the Fourteenth Amendment to parent his child as a fit parent and to family integrity under timely and efficient due process of law in the Family Courts in New Jersey.

111. Plaintiff has been injured in that his relationship with his child has been irreparably harmed and he has lost parenting time which can never be recovered.

112. There is no justification for the continued arbitrary and capricious delays in Plaintiff receiving a due process hearing with respect to his parental rights, delays which have been caused by the unconstitutional actions of the Defendants.

**WHEREFORE**, Plaintiff, respectfully demands judgment against the Defendants, Glenn A. Grant, J.A.D., David Tang, Edward W. Hoffman, and Linda A. Hynes, jointly and severally:

A) For Injunctive Relief in the form of an order requiring that the explicit instruction and policy be made requiring those acting under color of state law in New Jersey from retaliation against parents who exercise their First Amendment Rights to file complaints against those persons acting under color of state law who fail to provide due process to parents in connection with custody and parenting time court proceedings free from discrimination against parents who are African American.

B) For Injunctive Relief in the form of an order requiring the Superior Court of the State to institute ruled of procedure to guarantee that

parents receive fair and timely hearings concerning their rights of visitation with their children consistent with the due process requirements of the Fourteenth Amendment free from discrimination against parents who are African American.

## ATTORNEY'S FEES

113. Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

114. As a result of Defendants' actions as alleged in this complaint, Plaintiff has been required to retain the service of attorneys and are entitled to a reasonable amount for attorney's fees pursuant to 42 U.S.C.A. §1988 for those violations covered by the Civil Rights Act.

## JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Plaintiff demands that this matter be tried to a jury of twelve in the United States District Court for the District of New Jersey.

Respectfully submitted,

Dated:        October 28, 2024

KENNETH ROSELLINI, ESQ. (6047)
Attorney at Law

## TRIAL COUNSEL DESIGNATION

Kenneth Rosellini, Esq. is hereby designated trial counsel in this matter.